IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-02969-CMA

KYNAN SCOTT ARNOLD,

    Petitioner,

v.

JASON LENGERICH, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

Petitioner Kynan Scott Arnold is in the custody of the Colorado Department of Corrections. He brings this habeas corpus action under 28 U.S.C. § 2254 to challenge state-court convictions for possessing chemicals or supplies to manufacture a controlled substance (methamphetamine), several drug-possession crimes, and adjudication as a habitual criminal. (Doc. # 1). Petitioner's habeas application initially asserted six claims, with the fifth claim having two subparts. The Court dismissed two of the claims—claims 4 and 5(b)—on procedural grounds. (*See* Doc. # 22). What remains are claims 1, 2, 3, 5(a), and 6. For the reasons below, the Court rejects each claim on the merits and denies the habeas application.

## I.    STANDARDS OF REVIEW

"The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits

in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)). Petitioner's remaining claims were adjudicated on the merits in state court. As such, it is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Petitioner bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because Petitioner is *pro se*, the Court liberally construes his filings, but will not act as an advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.   BACKGROUND

In addressing Petitioner's postconviction appeal, the Colorado Court of Appeals (CCA) summarized the state proceedings as follows:

> Police officers sought a warrant to search Arnold's home and storage shed. The affidavit supporting the warrant application stated that officers had determined that Arnold was a convicted felon and Arnold's ex-wife and ex-girlfriend had told officers that Arnold had several firearms and illegal drugs in his home and shed. A judge granted the application and issued a search warrant.

2

Upon executing the warrant, officers found methamphetamine and chemicals and supplies used to make it. After a jury trial, Arnold was convicted of possessing chemicals or supplies to manufacture a controlled substance, possessing more than a gram of a schedule II controlled substance (methamphetamine), possessing more than eight ounces of marijuana, and possessing drug paraphernalia. In a separate habitual criminal proceeding, the trial court found Arnold guilty of three habitual criminal counts.

The trial court determined that possessing chemicals or supplies to manufacture a controlled substance was an extraordinary risk crime and sentenced Arnold to [64] years in prison for that offense. It also sentenced Arnold to concurrent terms of forty years on each of the charges of possession of methamphetamine and marijuana, to run concurrently with the [64]-year sentence.

Arnold directly appealed, challenging his habitual criminal convictions and the legality of his sentence. A division of this court affirmed his convictions, but held that the possessing chemicals or supplies offense was not an extraordinary risk crime and his [64]-year sentence on that count was therefore illegal. *People v. Arnold*, (Colo. App. 12CA0708, Oct. 30, 2014) (not published pursuant to C.A.R. 35(f)) (*Arnold I*). The division vacated Arnold's [64]-year sentence for the chemicals and supplies offense and remanded the case for resentencing on that count without the extraordinary risk crime aggravator. *Id.* On remand, the trial court resentenced Arnold to [48] years on that count.

(Doc. # 12-12 at 2-3).

After the state-court proceedings concluded, Petitioner filed this § 2254 action on October 1, 2020. (Doc. # 1). The following claims remain for federal habeas review:

1.      At the habitual trial proceeding, the prosecutor committed a discovery

violation and violated Petitioner's right to a fair trial by failing to disclose a report

authored by the state's fingerprint expert, Micha Rasnet (*id.* at 4-5);

2.      Trial counsel, Michele Newell, was constitutionally ineffective in handling a

suppression hearing concerning evidence discovered during the search of

Petitioner's home and statements made while being booked at the El Paso

3

County Jail (*id.* at 5-8);

3.      That the CCA erred in finding appellate counsel, Cynthia Harvey, had not

rendered constitutionally ineffective assistance (*id.* at 8-10);

5.      That the CCA erred in finding trial counsel, Shimon Kohn, had not

rendered constitutionally ineffective assistance by failing to challenge the

admissibility of "proof of identity" evidence at Petitioner's habitual offender

proceeding (*id.* at 15-18); and

6.      His 48-year sentence for the chemicals and supply offense was so

disproportionate as to violate the Eighth Amendment (*id.* at 18-23).

As relief, Petitioner "moves the Court to vacate sentences and reverse

convictions, remand back to the El Paso County District Court for a new trial or habitual

criminal proceeding. To suppress all evidence and dismiss all charges and/or whatever

relief is deemed appropriate by this Court." (*Id.* at 25).

In their *Answer*, Respondents contend the CCA's resolution of each claim was

not contrary to, or an unreasonable application of, clearly established federal law—

barring habeas relief under § 2254(d)(1). (*See* Doc. # 28). Nor were the CCA's factual

findings unreasonable, making relief unavailable under § 2254(d)(2). (*Id.*). In his *Reply*,

Petitioner maintains the state criminal proceedings violated his constitutional rights,

requiring habeas relief. (*See* Doc. # 35). The Court will now discuss each claim.

## III.    DISCUSSION

### A.  Claim 1: Failure to disclose report authored by state fingerprint expert.

Petitioner first claims that the prosecution's failure to disclose a report authored

4

by the state's fingerprint expert, Micha Rasnet, violated Colo. R. Crim. P. 16 and his

right to a fair trial under the Due Process Clause. (Doc. # 1 at 4; Doc. # 35 at 2-5).

Respondents counter that AEDPA bars relief because the CCA's finding of harmless

error beyond a reasonable doubt was reasonable and supported by the record. (Doc. #

28 at 9-13). The Court will recount why the CCA rejected the claim in state court, and

then address whether § 2254 provides any basis for habeas relief.

　　　　1.  *CCA's denial of the claim.*

　　　　The CCA found no basis for reversal because the claimed discovery violation

was harmless beyond a reasonable doubt:

> III. Habitual Criminal Adjudication
> Defendant next contends that we must set aside his habitual offender
> convictions because of a discovery violation. We disagree.
>
> While defendant's counsel was cross-examining one of the prosecution's
> fingerprint experts, the expert referred to notes she had made on copies of
> the fingerprint cards. These notes had not been provided to the defense,
> and defendant's counsel moved for a mistrial. The court denied the motion,
> but granted a short continuance to allow defense counsel to review the
> notes.
>
> In ruling on the habitual counts at the end of trial, however, the court
> explicitly stated that its findings were independent of any fingerprint
> evidence or analysis. Although the court agreed that the fingerprint
> evidence supported the habitual offender findings, the court further stated
> that it "wish[ed] to make clear for the record that the Court's conclusion
> would have been the same irrespective of whether or not the fingerprint
> analysis had been admitted into evidence."
>
> Defendant asserts that the prosecution's failure to provide him with the
> expert's notes violated Crim. P. 16. He maintains that, without the notes,
> he was unable to obtain his own expert or adequately to challenge the
> fingerprint comparison testimony. He also contends, for the first time on
> appeal, that the court's failure to grant his motion for a mistrial, or to grant
> a sufficient continuance to obtain an expert, violated his constitutional
> rights to due process and to a fair trial. We disagree.

We assume, without deciding, that the prosecution's failure to disclose the notes constituted a discovery violation. We nevertheless conclude that the court did not err in fashioning an appropriate remedy.

Whether to impose a sanction for a discovery violation is a decision within the district court's discretion. *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001). The goal of any sanction should be to cure any prejudice resulting from the violation. *Id.* Generally, the court should impose "the least severe sanction that will ensure that there is full compliance with the court's discovery orders.*" Id.* (citing *People v. Cobb*, 962 P.2d 944, 949 (Colo. 1998)).

An appellate court will reverse an order denying a motion for mistrial only if there is a clear showing of an abuse of discretion and prejudice to the defendant. *People v. Williams*, 2012 COA 165, ¶ 13.

Further, we review unpreserved constitutional arguments only for plain error. *People v. Vigil*, 127 P.3d 916, 929 (Colo. 2006). Only those obvious errors that undermine the trial's fundamental fairness and cast serious doubt on the reliability of the conviction constitute plain error. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

In its ruling on the habitual counts, the court specifically stated that its finding was independent of any fingerprint analysis introduced by the prosecution. The court ruled that, even without the fingerprint evidence, the prosecution had proved beyond a reasonable doubt that defendant was the individual convicted in each of the three prior felony cases.

The evidence relied on by the court included records for the three prior felony convictions that showed defendant's name, birth date, physical description, FBI identifying number, social security number, and photograph. In addition, the court heard defendant's recorded admission of his prior convictions and his acknowledgement that the prosecution had found all of his prior convictions. *See People v. Moore*, 226 P.3d 1076, 1088 (Colo. App. 2009) (noting that expert testimony linking fingerprints is not the only way to show identity).

Defendant does not challenge the sufficiency of the evidence relied on by the court. Further, as noted, the court allowed a short continuance to allow defendant to study the notes and to examine the witness as to its contents. Under the circumstances, we cannot conclude the court abused its discretion in denying a mistrial or other sanction. *See People v. Banuelos*, 674 P.2d 964, 967 (Colo. App. 1983) (undisclosed report did not affect the trial's outcome, and thus court did not err in granting the defense only a continuance to study report and an opportunity to examine witnesses about the contents).

> Finally, we acknowledge defendant's argument that he preserved his constitutional arguments, and that we should apply a constitutional harmless error standard of review. However, even under the analysis urged by defendant, any error was harmless beyond a reasonable doubt because the verdict was surely unattributable to the error. *See People v. Fry*, 92 P.3d 970, 980 (Colo. 2004).

(Doc. # 12-4 at 4-8).

### 2.  Application of § 2254.

There is no basis for habeas relief on this claim. To start, insofar as Petitioner contends the failure to disclose evidence violated Colo. R. Crim. P. 16, he points to what is at most the violation of state rule of criminal procedure. But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, to the extent Petitioner takes issue with the CCA's application of a state rule of procedure, the challenge necessarily fails.[1]

Nevertheless, the CCA's resolution of Petitioner's constitutional due process claim was reasonable. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S.

---

[1] Petitioner filed a *Notice of Relevant Caselaw* on July 19, 2021. (Doc. # 36). He cites cases dealing with discovery violations under Federal Rules of Civil Procedure 26 and 34. Those rules do not have any relevance to Petitioner's criminal trial, or the issues in this case. Likewise, none of the cited cases—district court and circuit court decisions—get Petitioner closer to showing a violation of clearly established federal law as determined by the Supreme Court of the United States.

284, 294 (1973). "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). "[T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis." *Id.* at 684.

This claim fails for the simple reason that it did not affect the outcome of Petitioner's criminal convictions or sentences—*i.e.*, any error was harmless beyond a reasonable doubt. The trial court did not rely on the fingerprint evidence in finding Petitioner a habitual offender. Petitioner does not establish otherwise.

In addition to not relying on the fingerprint evidence, the evidence the trial court did rely on supported its conclusion, and is supported by the state-court record: three prior felony convictions showed defendant's name, birth date, physical description, FBI identifying number, social security number, and photograph. (Doc. # 26, Feb. 24, 2012 Trial Tr. at 38-39; 43-46; 124-132). The court also heard Petitioner's recorded admissions where he acknowledged that the prosecution had found all of his prior convictions. (*Id.* at 98-99). Petitioner has not explained how the withheld notes from the fingerprint expert would have changed the outcome in his case. He does not offer the Court any reason to conclude the CCA has unreasonably applied a materially indistinguishable Supreme Court case, or based its decision on an unreasonable factual determination.

Petitioner therefore fails to demonstrate the CCA's decision was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). Nor does Petitioner show by clear and convincing evidence that the state court's decision was

based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Habeas relief is thus not available.

### B.  Claims 2, 3, 5(a): Ineffective assistance of counsel.

Petitioner offers three ways his trial or appellate counsel was constitutionally ineffective. A defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Petitioner must demonstrate both deficient performance and that counsel's deficient performance resulted in prejudice to his defense. *Id.* at 687. If Petitioner fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *Id.* at 697. In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Petitioner's burden to overcome this presumption by showing the alleged errors were not sound strategy under the circumstances. *See id.*

The challenge of demonstrating counsel was ineffective is even greater for a state prisoner seeking federal habeas corpus review under § 2254(d). *See Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019). "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id.* (internal quotation marks and brackets omitted). Thus, review under § 2254(d) is doubly deferential. *See id.* "The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard." *Id.* (citations and internal quotes omitted). "And because the

9

*Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard." *Id.*

Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). In determining whether Petitioner has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Petitioner. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

The *Strickland* standard also governs ineffective assistance of appellate counsel claims. *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue[.] If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Id.* (citation and internal quotation omitted).

***Claim 2—trial counsel's handling of the suppression hearing:*** Petitioner first argues that "[t]he Colorado Court of Appeals erred by deciding that trial counsel, Michel[e] Newell[,] did not ineffectively argue for suppression of evidence discovered during the search." (Doc. # 1 at 5). He further faults Ms. Newell "for failing to move for suppression of custodial statements allegedly made by [Petitioner] during 'booking' at the El Paso County Criminal Justice Center." (*Id.* at 7). The Court will set forth the CCA's resolution and then discuss whether the requirements of § 2254 have been met.

10

1.  *CCA's resolution.*

In rejecting that trial counsel was ineffective in handling the suppression hearing and failing to suppress custodial statements, the CCA found Petitioner failed to show prejudice under *Strickland*.

> Arnold's arrest followed a search of his apartment and storage units revealing a clandestine methamphetamine laboratory and many other items indicative of manufacturing methamphetamine. Warrants to conduct searches of his apartment and storage units were obtain[ed] based on statements made by his ex-wife, Janell Delaney, to Officer Jelmo during his investigation of a domestic violence incident involving Arnold and Delaney. Many of Arnold's claims center around his challenge to the probable cause affidavit and affidavit in support of the search warrants. In general, he challenges the veracity of Delaney's statements to Officer Jelmo and the veracity of Officer Jelmo's statements in his affidavit. Arnold argues that his trial counsel's failure to call certain witnesses and otherwise challenge the veracity of the statements was deficient and resulted in prejudice to him. Because Arnold does not explain how trial counsel's alleged deficient performance would have resulted in a different outcome of the proceedings, we reject his claims.

> [A]n explanation of how Arnold failed to argue prejudice as to each, are as follows:

> •       Claim that trial counsel ineffectively argued for suppression of evidence discovered during the search: Arnold argues his trial counsel was ineffective in failing to call Delaney and his ex-girlfriend, Melissa Burnside, as witnesses at the suppression hearing. He reasons that some of Delaney's statements to law enforcement were either inaccurate or a few months old and therefore improperly relied upon by law enforcement. For example, he argues that Delaney claimed to have seen a gun under the bathroom vanity a few months prior to the execution of the search warrant. However, the search did not reveal a gun under the bathroom vanity. Arnold asserts that trial counsel's failure to call Delaney as a witness to illustrate this discrepancy was deficient. He does not explain, however, how this discrepancy would have altered the outcome of the suppression hearing— particularly in light of the fact that Delaney also reported a history of Arnold cooking methamphetamine in their apartment and manufacturing equipment was discovered.

*       *       *

- Claim that trial counsel was ineffective for failing to argue that custodial statements were inadmissible: As the trial court notes, the only statements made by Arnold while in custody were "statements made to Officer Jelmo indicating an intent to flee and denying his criminal history." Arnold does not explain how the exclusion of these statements would have produced a different outcome at trial.

(Doc. # 12-12 at 6-7, 9).

    2. *Application of § 2254.*

Respondents insist that the CCA's rejection of this claim was not contrary to settled Supreme Court caselaw. (Doc. # 28 at 13-19). The Court agrees. The CCA applied *Strickland*, and did so in a reasoned manner. As that court explained, Petitioner's ex-wife provided officers with reliable information that supported probable cause: She reported that Petitioner had been cooking methamphetamine in the apartment; the police found equipment to manufacture methamphetamine in the apartment. Statements about Petitioner's intent to flee and a denial of his criminal history have no relation to the evidence discovered during the search, or his subsequent convictions and sentences. Thus, the required prejudice under *Strickland* was not shown.

To the extent Petitioner continues to press additional ways Ms. Newell was ineffective at the suppression hearing or prejudiced his defense, it is beside the point: "The pivotal question [on federal habeas review] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Richter*, 562 U.S. at 101. And "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was

12

before that state court." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). Petitioner points to nothing in the state-court record to show the CCA's application of *Strickland* was unreasonable. Consequently, Petitioner is not entitled to habeas relief.

**Claim 3—appellate counsel's failure to raise certain issues:** Petitioner next argues the CCA erred in denying his claim that appellate counsel was not ineffective when she failed to raise appellate challenges to the district court's adverse ruling at the suppression hearing. (Doc. # 1 at 8-10; Doc # 35 at 10-15). The Court will again set forth the CCA's resolution of the claim, followed by a discussion § 2254.

    1. *CCA's rejection of the claim.*

The CCA first explained that Petitioner's ineffective assistance of appellate counsel claims "are based on appellate counsel's failure to raise certain issues on direct appeal." (Doc. # 12-12 at 11-12). The court went on to deny relief: "In his opening brief, Arnold fails to compare these issues to those that appellate counsel did raise and explain why the unraised issues were clearly stronger. He has therefore failed to challenge the postconviction court's deficient performance ruling, and we affirm the court's denial of these claims on that basis." (*Id.* at 12).

    2. *Application of § 2254.*

"Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" *Smith v. Robbins,* 528 U.S. 259, 285 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998) ("Absent counsel's omission of an obvious winner on appeal, we are not inclined to second-guess appellate counsel's decision to eliminate arguable but weak claims.").

The denial of Petitioner's ineffective assistance of appellate counsel claim reasonably applied *Strickland.* As the CCA found, Petitioner made no showing as to why the omitted issues were clearly stronger than those presented on direct appeal. *See Smith*, 528 U.S. at 288 ("appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."). As the trial court noted, appellate counsel obtained relief for Petitioner on direct appeal: "[Petitioner]" received a benefit by the argument that [he] received too high a sentence for one of the charges and the Court of Appeals remanded the case for resentencing on that count." (*See* Doc. # 26, Ct. File at 836, ¶ 18). After direct appeal, the case was remanded where the trial court reduced Petitioner's sentence on the habitual count from 64 years to 48 years. In other words, counsel was both effective and successful on direct appeal. Petitioner does not demonstrate the CCA's resolution of his ineffective assistance of appellate counsel claim was an unreasonable application of federal law. So habeas relief is not available on this claim.

**Claim 5(a)—counsel at habitual offender proceeding:** Petitioner was represented by Shimon Kohn at his habitual offender proceeding. Petitioner maintains that "the CCA erred in finding trial counsel (Shimon Kohn) had not rendered constitutionally ineffective assistance by failing to challenge the admissibility of 'proof of identity' evidence at [his] habitual offender proceeding." (Doc. # 35 at 15; Doc. # 1 at 15-18). The court will recount the CCA's decision and then discuss § 2254.

       1.   *CCA's resolution.*

Like claims 2 and 3 above, the CCA found Petitioner failed to show prejudice under *Strickland.* The court's explanation was as follows:

> Claim that trial counsel was ineffective for failing to challenge the admission of various evidence at the habitual criminal proceeding: Arnold argues that had counsel challenged this evidence there is "a reasonable probability [Arnold] would not have been convicted as a habitual offender or sentenced as one," but provides no further explanation as to why. Although he states that "prejudice is presumed," he cites no authority for this proposition.

(Doc. # 12-12 at 10).

       2.   *Application of § 2254.*

Here again, Petitioner does not furnish any reason the CCA's decision was contrary to, or an unreasonable application of, *Strickland.* In his *Reply*, Petitioner argues that the CCA omitted part of his argument on appeal: "Had counsel objected to this evidence there is a reasonable probability Mr. Arnold would not have been convicted as a habitual offender or sentenced as one. Prejudice is presumed through this disparity." (Doc. # 35 at 15-16; Doc. # 12-8 at 29 (omitted words underlined)). The omitted words do not help Petitioner. "Through this disparity" merely refers to the preceding sentence where Petitioner argued there was a reasonable probability he would not have been convicted or sentenced as a habitual offender (as opposed to being sentenced only on the conviction for the triggering offense). Quite simply, the phrase adds nothing of substance.

The CCA acknowledged, but rejected, Petitioner's argument that prejudice is presumed in such a situation. And the CCA was right to reject Petitioner's presumption-of-prejudice argument: Under *Strickland*, "ineffectiveness claims alleging a deficiency in

attorney performance are subject to a general requirement that the defendant *affirmatively prove prejudice*." *Strickland*, 466 U.S. at 693 (emphasis added). Petitioner cites nothing to the contrary. Hence, the CCA's rejection of this claim was not contrary to, or an unreasonable application of, federal law. Nor does Petitioner claim the decision was based on an unreasonable determination of the facts in light of the evidence presented. As such, habeas relief is not available.

### C. Claim 6: Proportionality of sentence.

Petitioner's final claim asserts that his 48-year sentence on the conviction for possessing chemicals and supplies to manufacture a controlled substance is so grossly disproportionate as to violate the Eight Amendment. (Doc. # 1 at 18-23; Doc. # 35 at 21-27). First a recap of the CCA's decision, then a discussion of § 2254.

#### 1. *CCA's decision.*

After discussing how the Eight Amendment applies to claims of a disproportionate sentence, the court saw no inference of gross disproportionality.

> III. Proportionality of Arnold's Chemicals and Supplies Sentence
> Arnold also argues that his forty-eight-year sentence for the chemicals and supplies offense is grossly disproportionate and therefore violates the Eighth Amendment. In his opening brief, he does not challenge the proportionality of his two other habitual sentences.
>
> We review the proportionality of Arnold's sentence de novo, *see Rutter v. People*, 2015 CO 71, ¶ 12, and conclude that it was proportional.
>
> The Eighth Amendment's prohibition on cruel and unusual punishment proscribes sentences that are grossly disproportionate to the crime. *Wells-Yates v. People*, 2019 CO 90M, ¶ 5.
>
> When a defendant challenges the proportionality of a sentence, a reviewing court conducts an abbreviated proportionality review wherein it compares the gravity or seriousness of the offense with the harshness of the penalty. *Id.* at ¶ 18. If that comparison yields an inference of gross disproportionality,

16

the reviewing court proceeds to an extended proportionality review. *Id.* In an extended proportionality review, the reviewing court compares the defendant's sentence to sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *Id.*

Additional rules apply when a defendant challenges a sentence mandated by the habitual criminal statute, section 18-1.3-801, C.R.S. 2019. As relevant here, that statute provides that if a defendant is convicted of a felony and has three previous felony convictions arising out of separate and distinct criminal episodes, the defendant's sentence must be four times the maximum of the presumptive range. § 18-1.3-801(2)(a)(I)(A). When conducting an abbreviated review of a habitual criminal sentence, the reviewing court must consider the triggering and predicate offenses together and determine whether they are so lacking in gravity or seriousness, in combination, that there is an inference of gross disproportionality. *See Wells-Yates*, ¶ 24. This analysis allows courts to consider relevant legislative amendments enacted after the date of the offenses, even if the amendments are not retroactive. *Id.* at ¶ 45. Such amendments may reflect the legislature's revised judgment about the gravity and seriousness of the conduct that constituted the offenses. *Id.* at ¶ 46. In the end, whether a particular offense qualifies as grave and serious depends on "the facts and circumstances surrounding the specific crime committed." *Id.* at ¶ 69.

Colorado courts have held that some offenses are per se grave and serious because it is impossible to commit the offense without engaging in grave and serious criminal conduct. *Id.* at ¶ 65. But not all narcotics or drug offenses fall into this category. *Id.* at ¶ 66. On the one hand, "the sale or distribution of any quantity of narcotics is inherently grave or serious because it causes 'grave societal harm.'" *Id.* (quoting *People v. Gaskins*, 825 P.2d 30, 37 (Colo. 1992), abrogated by *Wells-Yates*, 2019 CO 90M). On the other hand, "the drug offenses of possession and possession with intent [are not] per se grave or serious." *Id.* These latter offenses, and especially possession with intent, may nevertheless qualify as grave and serious depending on the particular facts and circumstances of the defendant's conduct. *Id.* at ¶ 70.

Considering Arnold's triggering and predicate offenses together, we conclude that they are sufficiently grave and serious that there is not an inference of gross disproportionality to his forty-eight-year sentence. Arnold's predicate offenses arose out of three separate cases in Arizona. In the first case, Arnold pleaded guilty to possession of a dangerous drug after police found eleven grams of methamphetamine, twenty-nine grams of marijuana, and various drug paraphernalia in his home. In the second case, Arnold pleaded guilty to possession of a narcotic drug after police found

17

marijuana on his person and fourteen bindles of cocaine in his home. In the third case, Arnold pleaded guilty to possession of marijuana for sale and possession of a narcotic drug after police found three and half pounds of marijuana, eleven and a half grams of cocaine, and over ten thousand dollars in cash at his home.

We recognize that Colorado has legalized medical and recreational marijuana and that Arnold's non-marijuana offenses were mere possession offenses. But three of Arnold's predicate felonies involved him possessing either methamphetamine or cocaine in quantities suggesting that he intended to sell or distribute it, not merely use it himself. In fact, the presentence reports in the second and third predicate offenses indicate that Arnold admitted to selling drugs. Moreover, the facts surrounding Arnold's triggering offense suggested that he was manufacturing and selling methamphetamine. According to the presentence investigation report, in various storage units belonging to Arnold police found "a multitude of manufacturing paraphernalia, chemicals and precursors, firearms," and over twenty-five thousand dollars in cash.

In sum, the facts and circumstances surrounding Arnold's triggering and predicate offenses suggested that in each case, he was distributing cocaine or methamphetamine. Considering these offenses together, we conclude that they were grave and serious. And because they were grave and serious, there is no inference that they were grossly disproportionate to his forty-eight-year sentence. *See Rutter*, ¶ 25 (upholding ninety-six-year sentence for manufacturing methamphetamine).

(Doc. # 1 at 13-17).

 2. *Application of § 2254.*

The Eighth Amendment "contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (quotes and citation omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* at 23; *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("[O]ne governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of

18

years.").

A state legislature is not precluded from inflicting increased punishment on recidivists to deter repeat offenders and to separate them from society for an extended period of time. *Ewing,* 538 U.S. at 25-27; *see also Rummel v. Estelle,* 445 U.S. 263, 285 (1980) ("[T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction."). Thus, a court's proportionality review of a habitual offender sentence must take into account the state legislature's legitimate goals in sentencing repeat offenders. *See Ewing,* 538 U.S. at 29. State legislatures are afforded broad discretion to fashion a punishment that fits within the scope of the proportionality principle. *Lockyer,* 538 U.S. at 76.

Successful Eighth Amendment gross proportionality challenges to non-capital sentences are "exceedingly rare." *Harmelin*, 501 U.S. at 963; s*ee also Lockyer*, 538 U.S. at 77 ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."). The Supreme Court has only twice invalidated a criminal sentence under the Eighth Amendment. *See Weems v. United States*, 217 U.S. 349 (1910) (defendant sentenced to fifteen years in chains and hard labor for falsifying a public document); *Solem v. Helm,* 463 U.S. 277, 297 (1983) (defendant sentenced to life imprisonment without parole after committing six nonviolent felonies including writing a bad $100-dollar check).

Multiple cases, however, illustrate that criminal penalties may be harsh, yet pass constitutional muster. *Ewing*, 538 U.S. at 25-27 (upholding as constitutional defendant's sentence of 25 years to life where triggering offense was grand theft of three golf clubs

valued at $399 each, when the defendant had been convicted previously of four serious violent felonies for three burglaries and a robbery); *Rummel*, 445 U.S. at 284-85 (holding that it did not violate the Eighth Amendment for a state to sentence a three-time offender to life in prison with the possibility of parole under a recidivism statute, where the prior offenses were the fraudulent use of a credit card to obtain $80 worth of goods, a conviction for passing a $28.36 forged check, and the triggering offense of felony theft for obtaining $120.75); *Hutto v. Davis*, 454 U.S. 370, 371 (1982) (finding two consecutive terms of 20 years in prison for possession with intent to distribute nine ounces of marijuana and distribution of marijuana did not violate Eighth Amendment).

Measured against these Supreme Court cases, the CCA's rejection of Petitioner's Eighth Amendment proportionality challenge to his 48-year sentence on the habitual criminal conviction was not unreasonable. Notably, as the CCA explained, three of Petitioner's prior felonies "involved him possessing either methamphetamine or cocaine in quantities suggesting that he intended to sell or distribute it, not merely use it himself. In fact, the presentence reports in the second and third predicate offenses indicate that [he] admitted to selling drugs." (Doc. # 12-12 at 17); *see Hutto*, 454 U.S. at 379 (Powell, J., concurring) (finding the facts that defendant was "convicted of distributing marihuana, and had dealt in other drugs as well" to support consecutive 20-year sentences). Petitioner offers no authority for the proposition that manufacturing methamphetamine or distributing cocaine is not grave and serious criminal conduct. Moreover, police found a multitude of manufacturing paraphernalia, chemicals and precursors, firearms, and over $25,000 in cash in various of Petitioner's storage units. Facts further illustrating the seriousness of Petitioner's criminal conduct. And with

recidivism statutes like Colorado's at issue here, "the State's interest is not merely punishing the offense of conviction, or the 'triggering' offense: It is in addition the interest in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Ewing*, 538 U.S. at 29 (cites, brackets, and quotes omitted). Thus, Petitioner fails to demonstrate the CCA's decision was so far afield as to meet the requirements of § 2254(d)(1).

Nor does Petitioner suggest that the state court's rejection of this claim was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). To the contrary, the state-court record supports the factual findings. Therefore, habeas relief is not warranted on this claim.

## IV. CONCLUSION

In all, Petitioner points to nothing from the state criminal proceedings that qualifies as the sort of "extreme malfunction[] in the state criminal justice system[]" that § 2254 guards against. *Richter*, 562 U.S. at 102. The Court therefore

**ORDERS** that the *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (Doc. # 1) is denied and this case is dismissed with prejudice; and

**FURTHER ORDERS** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because Petitioner has not made a substantial showing of the denial of a constitutional right.

DATED August 4, 2021, at Denver, Colorado.

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge